UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

Boudoin, et al                                    Civil Action No. 06-1656

versus                                             Judge Tucker L. Melançon

State Farm Insurance Companies, et al      Magistrate Judge C. Michael Hill

### MEMORANDUM RULING

Before the Court is a Motion For Partial Summary Judgment Regarding National Flood Insurance Program Offset filed by defendant, State Farm Fire & Casualty Company ("State Farm") [Rec. Doc. 13], and a memorandum in opposition thereto filed by plaintiffs, Roxane and Frederick Boudoin [Rec. Doc. 21].  For the reasons that follow, defendant's motion will be granted in part and denied in part.

*Background*

Plaintiffs, Roxane and Frederick Boudoin, owned a residence located at 123 East Creole Highway in Creole, Louisiana ("the Property"). The Property was insured by State Farm under a homeowner's policy bearing Policy No. 18-51-648-0 ("the Homeowner's Policy"). The Homeowner's Policy provided plaintiff with insurance coverage against:

an accident, including exposure to conditions, which results in:
. . .
b. property damage;
. . .
"Property damage" means physical damage to or destruction of tangible property, including loss of use of this property....

"Section I - LOSSES NOT INSURED" provided:

. . .

    2.    We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events...

. . .

    c.  Water damage, meaning:
      (1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

*R. 13, Exh. D-1.*

State Farm also issued a flood insurance policy to plaintiffs covering the Property and bearing policy number 98-096539-8 ("the Flood Policy").

The Flood Policy provided coverage for "direct physical loss by or from flood...." *R. 13, Exh. D-2.*

    The following facts are uncontested: (1) Plaintiffs submitted a claim under their Flood Policy for contents damage and damage to their dwelling; (2) Plaintiffs also submitted a claim under their Homeowner's Policy for damage to their personal property and dwelling arising out of Hurricane Rita; (3) Plaintiffs' home was inspected by State Farm on October 19, 2005; (4) Based on the inspection of the home and surrounding area State Farm concluded that the cause of loss was flood;[1] (5) Under the Flood Policy plaintiffs were paid $116,700.00 for their dwelling and were paid $24,000.00 for contents. *R. 13; Stmt of Uncontested Facts.* Plaintiffs concede that they sustained significant

---

[1] Plaintiffs submitted an inspection report dated May 14, 2006 in which the consulting engineer, Charles R. Norman P.E., concluded that the property damage was caused by wind and flood damage. *R. 21-1.*

damage to their home due to flood, that this flood damage equaled at least the amount of payments made, and that they would not have made a claim for flood coverage had they not had such flood damage. *Id.*  Plaintiffs dispute, however, that they have been paid the policy limits under the Flood Policy and assert that they are owed an additional $3900.00, for total policy limits of $144,600.00, the amount they allege they increased their Flood Policy limits to on September 24, 2005. *R. 21-4; Response to Stmt of Uncontested Facts*.  Plaintiffs also contend that the flood damage they sustained was separate and apart from the significant wind damage which caused a constructive total loss to their home, outside building(s)/structures and contents prior to the flood damage. *Id.*

*Summary Judgment Standard*

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56*.  Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 122-23 (1986).  The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to

render the judgment prayed for.  *Id.*  Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party.  *Id.*

*Analysis*

State Farm moves for partial summary judgment asserting that plaintiffs are barred from seeking double recovery for the same loss under both their flood insurance policy and their homeowner's insurance policy.  In support of its motion, State Farm relies on the language of (1) the Flood Policy which covers "direct physical loss by or from flood" and expressly excludes losses caused directly or indirectly by wind or windstorm, and (2) the Homeowners' Policy which provides coverage for losses caused by wind, but expressly excludes any loss which would not have occurred in the absence of "water damage."

Plaintiffs maintain that State Farm's motion should be denied as: (1) There is no language in the policies that specifically state that plaintiffs' recovery under the policies will be reduced by any flood payments; (2) Payments to plaintiffs from a collateral source, such as the Flood Policy, do not reduce their recovery against State Farm under the Homeowners' Policy; (3) State Farm will gain an unfair advantage if it can use benefits provided by any National Flood Insurance Plan ("NFIP");[2] and, (4) In the event any windfall is

---

[2]  "Congress established the National Flood Insurance Program (NFIP) by enacting the National Flood Insurance Act of 1968, Pub.L. No. 90-448, §§ 1302-1376, 42 U.S.C. §§ 4001-28. The program's intent was 'to provide flood insurance protection to property owners in flood-prone areas under national policy promulgated by the Federal Emergency Management Agency (FEMA).' In 1983, Congress also adopted a program to permit insurance companies to write their own flood insurance policies, remitting the premiums to the Flood Insurance

received, it is more equitable that the insured should get all he paid for in premiums rather than the insurer escape liability for that which it has collected as a premium. *R. 21.*

In its motion, State Farm asserts that plaintiffs should be estopped from claiming that wind damage caused any losses for which they have already received funds for the same loss under the Flood Policy and urges the Court to rule that any recovery by plaintiffs should be offset by what they have already been paid under the Flood Policy. *R. 13.*

### Recovery under the Flood Policy and the Homeowner's Policy

State Farm argues that plaintiffs' potential recovery is limited to the difference between the Pre-Rita value of the dwelling and contents and the payments already received under the Flood Policy.  Defendant acknowledges, however, that whether and how much of plaintiffs' loss is covered by each respective policy is a question of fact and is not presently before the Court.

Plaintiffs do not deny they recovered under their Flood Policy for flood damage to their property.  They dispute, however that they have been paid the Flood Policy limits as alleged by State Farm and contend they increased their Flood Policy limits on September 24, 2005 when they purchased an additional $3900.00 in coverage and that amount remains unpaid.  The record includes a

---

Administration. Write-your-own companies 'draw money from FEMA through letters of credit to disburse claims,' and, consequently, 'United States Treasury Funds are used to pay the insured's claims.'" *Wellmeyer v. Allstate Ins. Co.* 2007 WL 1235042, *1 (E.D.La.,2007)(internal citations omitted).

"Renewal Certificate," effective September 24, 2005, in which the Declarations Page indicates that Frederick Boudoin was issued a renewal of his Flood Policy, No. 98-09-6539-8, covering his dwelling and personal property in the amount of $144,600.00, $3900.00 more than State Farm paid plaintiffs in Flood Policy limits. *R. 21-2*.

Hurricane Rita struck the Louisiana coast on September 24, 2005. *R. 13,* State Farm does not address plaintiffs' contention that they are owed an additional $3900.00 under their Flood Policy, but concedes that plaintiffs were paid their policy limits under the initial Flood Policy effective 09-24-2004 to 09-24-2005. The Declarations Page of the initial Flood Policy indicates the Policy expired on 09-24-2005 at 12:01 a.m., the Renewal Flood Policy makes no reference to the time upon which the policy became effective. Neither plaintiffs nor State Farm address the time at which the flood damage is alleged to have occurred. Thus, there is a dispute of material fact as to the Flood Policy limits. Summary judgment as to whether defendant has paid the policy limits under the Flood Policy and the extent to which the defendant is entitled to receive an offset is therefore not appropriate.

Plaintiffs contend that because their home and contents were "totally destroyed by high winds and gusts" State Farm owes the policy limits under their Homeowner's Policy and any recovery under their Homeowner's Policy should not be reduced by the amount they already received or will receive under their Flood Policy.

6

Defendant cites to the Court two cases from the Eastern District of Louisiana in which essentially the same issue raised by the plaintiffs was involved.  In *Weiss v. Allstate Ins. Co*, No. 06-3774, 2007 WL 891869 (E.D. La. Mar. 21, 2007, Vance, J.) the court considered a motion for summary judgment in which the plaintiffs collected flood policy proceeds of $250,000.00 on a building, and the insurer paid $42,128.18 under a separate homeowner's policy for damage to the property. *Id*. at *1. The plaintiffs contended that their property had a pre-storm value of at least $612,500.00, and they sought greater compensation under their homeowner's policy to cover the wind damage to the building and contents.  The *Weiss* court denied summary judgment holding that material issues of fact existed as to the value of the plaintiffs' home and whether plaintiffs had admitted that their property was damaged solely by flooding rather than by additional and separate wind damage.  *Id.* at *2-3.

In *Esposito v. Allstate Ins. Co*., 06-1837, 2007 W 1125761 (E.D.La. Apr. 16, 2007, Zainey, J.), the plaintiff received $185,265.00 for flood damage to his building's structure and then contended that wind caused a total loss of the property and sought the full policy limits on his homeowner's policy. *Id.* at *1. Citing *Weiss*, the *Esposito* court granted summary judgment in favor of the insurer.  *Id.* at *2.  The court acknowledged that the plaintiff

> is entitled to recover in this lawsuit any *previously uncompensated* losses that are covered by his homeowner's policy *and which when combined with his flood proceeds do not exceed the value of his property*.

*Id.* (emphasis in original).

However, as the plaintiff had already received compensation for the full value of his property the court concluded that he was not entitled to

> recharacteriz[e] as wind damage those losses for which he has already been compensated by previously attributing them to flood waters.  The NFIP program did not *erroneously* make payments to Plaintiff for flood losses to his home.   Plaintiff sought those payments and he obtained them by convincing FEMA that his losses were caused by flood and covered by his flood policy. Plaintiff has now been compensated for those losses....

*Id.* (emphasis in original).

It is well settled law that "[a]s a general rule the claimant may recover under all available coverages provided that there is no double recovery."  *Cole v. Celotex Corp.*, 599 So.2d 1058, 1080 (La. 1984).   In this instance, the coverage language in the policies is clear.  The Flood Policy covers only those damages related to flooding and the Homeowner's Policy covers damages related to wind but expressly excludes flood damage.  As the *Esposito* court held, plaintiffs are not allowed to obtain a double recovery by "recharacterizing as wind damage those losses for which [they have] already been compensated by previously attributing them to flood water."   *Esposito*, at *2.  However as held by the court in *Weiss,* a plaintiff whose property sustains damage from flood and from wind can clearly recover for his segregable wind and flood damages except to the extent that he seeks to recover twice for the same loss.  In the event plaintiffs can establish that they sustained wind damage which was covered under their Homeowner's Policy not covered or paid under their Flood Policy, an issue which is not presently before the Court, they would be entitled

to additional indemnity.  State Farm is not liable to plaintiffs for compensation for  flood damage to their property under the Homeowner's Policy.

Based on the record before the Court and the clear language of the policies at issue, the Court need not address plaintiffs' contention that the collateral source rule precludes State Farm from denying under the Homeowner's Policy any compensation they have already been paid under the Flood Policy.  Nor is it appropriate for the Court to invoke its equity jurisdiction as equity applies only when there is no express or positive law governing the occurrence.  *La.C.C. art. 4.*  Accordingly, State Farm's motion will be granted in part, and plaintiffs may not recover under their Homeowner's Policy for any property damage they have received compensation for under their Flood Policy, and will be denied in part as there are genuine issues of material fact as to the actual limits of their Flood Policy.